```
                                              USDC SDNY
                                              DOCUMENT
                                              ELECTRONICALLY FILED
                                              DOC #:_____
                                              DATE FILED: 8/2/17
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
MOSHE MARCEL AJDLER,                 :        17-cv-1530 (VM)
                                     :
                    Plaintiff,       :        **DECISION AND ORDER**
                                     :
     - against -                     :
                                     :
PROVINCE OF MENDOZA,                 :
                                     :
                    Defendant.       :
------------------------------------X
**VICTOR MARRERO, United States District Judge.**

     Moshe Marcel Ajdler ("Ajdler") commenced this action
against the Province of Mendoza in Argentina (the "Province")
alleging breach of contract in connection with bonds issued
by the Province that Ajdler owns, and seeking monetary,
injunctive, and declaratory relief. (See "Complaint," Dkt.
No. 1.)

     By letter correspondence, the Province sought leave to
move to dismiss. The Court now construes the Province's
correspondence as a motion to dismiss the Complaint for
failure to state a claim pursuant to Rule 12(b)(6) ("Rule
12(b)(6)") of the Federal Rules of Civil Procedure.
("Motion," Dkt. Nos. 7, 9.) For the reasons stated below, the
Province's Motion is GRANTED.

## I.   BACKGROUND[1]

In 1997, the Province issued $250 million in bonds (the "Bonds") pursuant to an indenture dated September 4, 1997, of which Ajdler "is the beneficial owner of $7,050,000 principal amount . . . ." (Complaint ¶ 11; see also "Indenture," Dkt. No. 1-1.)  On June 30, 2004, the Province presented holders of the Bonds "an optional offer to exchange the Bonds" for bonds due in 2018 (the "New Bonds") and on which the Province would commence making interest payments on March 4, 2006. (Id. ¶ 24; see also "Exchange Offer," Dkt. No. 1-2.) "On August 23, 2004, the Province . . . announced that it would no longer make the scheduled interest payments on the Bonds, but would only make payments on the New Bonds issued pursuant to the Exchange Offer." (Id. ¶ 26.) A majority of Bondholders ultimately exchanged their Bonds for New Bonds; of the original $250 million issued in Bonds, "[a]pproximately $230.6 million in principal of the original Bonds were exchanged for an equivalent principal amount of the New Bonds." (Id. ¶¶ 28-29.) Ajdler did not participate in the Exchange Offer.

---

[1] The factual background below, except as otherwise noted, derives from the Complaint and the facts pleaded therein, which the Court accepts as true for the purposes of ruling on a motion to dismiss. See infra Section II.A. Except where specifically quoted, no further citation will be made to the Complaint or the documents referred to therein.

Separately and unrelated to the Exchange Offer, on May 12, 2016, the Province offered $500 million in bonds due in 2024 (the "2024 Bonds"), with interest payments scheduled to begin in November 2016.

On March 1, 2017, Ajdler commenced this action alleging breach of the Indenture arising from the Province's "failure to make contractually-mandated principal and interest payments" on the Bonds since March 2004. (Complaint ¶¶ 1, 56.) Ajdler further alleges that the Province's payments of interest and principal on other debts, such as on the New Bonds and 2024 Bonds, violates provision 1(c) of the Indenture's Terms and Conditions, which require that the Bonds "rank <u>pari</u> <u>passu</u> [or equal] among themselves and at least <u>pari</u> <u>passu</u> in priority of payment with all other present and future unsecured and unsubordinated Indebtedness[.]" (Complaint ¶¶ 46, 64-65.) Ajdler seeks a money judgment in the amount of unpaid principal and interest due on the Bonds, and a mandatory injunction requiring the Province to make interest payments to Ajdler whenever the Province "pays interest or principal to the holders" of the New Bonds, the 2024 Bonds, or any other "Indebtedness" as described in the <u>pari</u> <u>passu</u> provision. (Complaint ¶¶ 69, 81, 92.)

By letter dated April 5, 2017, the Province moves to dismiss the Complaint pursuant to Rule 12(b)(6) because each

- 3 -

of Ajdler's claims are time-barred, meritless, or both. (See "April 5 Letter," Dkt. No. 7.) Specifically, the Province argues that "all of plaintiff's claims . . . are barred by the four-year contractual prescription period contained in the [I]ndenture" (id. at 1), which provides that

> All claims against the Province for payment of principal of or Interest (Including Additional Amounts) on or in respect of the Bonds shall be prescribed unless made within four years from the date on which such payment first became due.

(Id. at 2 (quoting Indenture at 48 Section 15); see also Complaint at ¶ 49.)

The Province argues that, because the Bonds "matured by their terms on September 4, 2007[,] any claims by plaintiff on the bonds, either for principal or interest, were extinguished by September 4, 2011, at the latest." (April 5 Letter at 2.) The Province further argues that Ajdler's claims may have expired even earlier — on December 13, 2008 — as the Bonds were "accelerated on December 13, 2004, thereby making immediately due and payable" any outstanding principal and interest payments. (Id.) In the alternative, the Province argues that "[a]ll of plaintiff's claims are untimely even if one ignores the contractual prescription period . . . and applies instead New York's six year statute of limitations." (Id.) The Province argues that, in that case, "plaintiff's claims expired either on September 4, 2013 (six years after

stated maturity) or December 13, 2010 (six years after acceleration)." (Id.) Furthermore, the Province contends that Ajdler's "theory that interest payments escape the statute of limitations or continue to come due into perpetuity . . . has already been rejected by th[is] Court." (Id. (citing White Hawthorne, LLC v. Republic of Argentina, No. 16 Civ. 1042, 2016 WL 7441699, at *5 (S.D.N.Y. Dec. 22, 2016)).)

Finally, the Province argues that the Complaint fails to plead the "extraordinary course of conduct necessary to allege a violation of the . . . pari passu clause." (Id. at 2 (internal quotation marks omitted).) Rather, the Province asserts, the Complaint alleges little more "than that the Province has paid other creditors while plaintiff remains unpaid on his (time-barred) claims," which is insufficient to state a claim of breach of the pari passu clause. (Id. at 3.)

By letter dated April 12, 2017, Ajdler opposes the Province's Motion, arguing that, "[a]lthough Mr. Ajdler waited some time before bringing this action, the plain language of the Indenture" supports Ajdler's claim for unpaid principal and interest. ("Opposition," Dkt. No. 8, at 1-2.) Ajdler contends that paragraph 4.6 of the Indenture "entitled 'Unconditional Right of Bondholders to Receive Principal and Interest' . . . was intended to supersede the language" of

the prescription clause. (Id. at 2 n.1.) Paragraph 4.6 (the "Unconditional Right Provision") provides that:

> Notwithstanding any other provision in this indenture, each Bondholder shall have the right, which is absolute and unconditional, to receive payment of the principal of and interest on (including Additional Amounts) its Bond on the stated maturity expressed in such Bond and to institute suit/or the enforcement of any such payment, and such right shall not be impaired without the consent of such Bond holder.

(Dkt. No. 1-1 at 14, Section 4.6.)

Ajdler contends that this Unconditional Right Provision entitles him to the principal and interest he seeks, notwithstanding any prescription or limitations period. (See Opposition at 1-2, 2 n.1.)

In support, Ajdler cites to NML Capital, Ltd. v. Republic of Argentina, 17 N.Y.3d 250 (2011), arguing that the case "establishes that . . . Ajdler's claim for interest on the Bonds is not, in fact, time-barred or otherwise precluded." (Opposition at 1-2.) Ajdler contends that NML Capital establishes "an obligation to make interest payments 'until the principal hereof is paid' [pursuant to which] the bondholders are entitled to biannual interest payments until the principal is actually repaid in full — and not merely until the bond maturity date.'" (Opposition at 2 (quoting NML Capital, 17 N.Y.3d at 260).)

- 6 -

Ajdler argues that, because the Indenture here includes a requirement providing for "[i]nterest [to] accrue . . . until payment of said principal has been made or duly provided for" and the Province has not paid Ajdler the principal due on the Bonds, NML Capital "compels the conclusion that the Province was obligated and continues to be obligated to make biannual interest payments" to Ajdler. (Opposition at 2-3, 2 n.2.) Accordingly, Ajdler maintains that, at a minimum, he has "the right to recover interest . . . due and unpaid for at least the past four years." (Id. at 3.)

Finally, with respect to his claims of breach of the pari passu clause, Ajdler argues that whether mere non-payment is sufficient to establish a claim is an open question. Ajdler claims that he should, at a minimum, be permitted to engage in discovery to "ascertain whether the Province has, in fact, engaged in the kind of conduct in breach of a pari passu clause[.]" (Id. at 3.)

By letter dated April 18, 2017, the Province responds that the case law which Ajdler cites in support of his position cannot save Ajdler's time-barred claims. (See "Reply," Dkt. No. 9.) Namely, the Province notes that NML Capital presented no statute of limitations issues, "because plaintiffs sued for principal and interest before any time bar had run." (Reply at 2.) The Province argues that the

"novel position" taken by Ajdler — "that a plaintiff whose
principal claims had lapsed still ha[s] a claim to interest
in connection with the lapsed principal claim — was not before
and was not decided by the NML Capital court" and is contrary
to White Hawthorne. (Id.)

In addition, the Province argues that no tension exists
between the prescription and the Unconditional Right
Provision cited by Ajdler, and indeed, that this Court has
"previously rejected an attempt by another bondholder to use
[an Unconditional Right Provision] to eliminate other
applicable Indenture provisions in these bonds." (Id. at 2
n.1 (citing Greylock Global Opportunity Master Fund Ltd. v.
Province of Mendoza, No. 04 Civ. 7643, 2005 WL 289723, at *7
(S.D.N.Y Feb. 8, 2005)).) Finally, the Province asserts that
Ajdler's pari passu clause claims are (1) time-barred because
they are ancillary to his cause of action for breach of the
Indenture and (2) meritless because Ajdler fails to explain
"how the type of 'extraordinary' behavior' found by the Second
Circuit to constitute a violation of the pari passu clause
could somehow remain unknown to a bondholder." (Reply at 2
(citing NML Capital, Ltd. v. Republic of Argentina, 727 F.3d
230, 247 (2d Cir. 2013)).)

On April 27, 2017, the Court held a telephone conference
to discuss the parties' pre-motion correspondence regarding

the Province's contemplated motion to dismiss. (<u>See</u> Dkt. Min.
Entry for April 27, 2017.) During that conference, the Court
granted Ajdler's request to submit a brief letter addressing
the Province's Reply. (<u>See</u> <u>id.</u>)

By letter dated May 1, 2017, Ajdler expands on his
analysis of <u>NML Capital</u> and his contention that the case
requires the Province to make biannual interest payments to
Ajdler notwithstanding any limitations issues. ("Sur-reply,"
Dkt. No. 6.) Ajdler argues that <u>NML Capital</u> "'signaled that
this periodic payment obligation remained in effect after the
loan matured, until the principal was paid or the contract
merged in a judgment,' neither of which has occurred here."
(<u>Id.</u> at 2 (quoting <u>NML Capital</u>, 17 N.Y.3d at 261).) Ajdler
further declares that "nothing in the Court's decision or the
terms of the bonds at issue (there or here) . . . supports
the Province's . . . assertion that the parties did not intend
such an obligation to survive in the event a claim on the
principal was time-barred[.]" (Sur-reply at 2.) Ajdler
maintains that, if "the Province intended to bar claims for
biannual interest payments accruing subsequent to the running
of the statute of limitations on principal," it could have
made that intention clear in the terms of the Indenture. (<u>Id.</u>)

Finally, Ajdler contends that, to the extent it may be
applicable here, <u>White Hawthorne</u> is contrary to <u>NML Capital</u>

and relies on case law that Ajdler claims is "no longer good
law" in light of NML Capital. (Sur-reply at 2 (citing Phx.
Acquisition Corp. v. Campcore, Inc., 81 N.Y.2d 138, 143 (1993)
and Duval v. Skoras, 44 N.Y.S.2d 107, 111 (Sup. Ct. N.Y. Cty.
1943).)

## II.  RELEVANT LAW

### A.  MOTION TO DISMISS PURSUANT TO 12(B)(6)

In considering a motion to dismiss the complaint for
failure to state a claim pursuant to Rule 12(b)(6), the Court
should not grant such remedy "unless it appears beyond doubt
that the plaintiff can prove no set of facts in support of
his claim which would entitle him to relief." Flores v. S.
Peru Copper Corp., 343 F.3d 140, 148 (2d Cir. 2003) (quoting
Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The role of a
court in ruling on a motion to dismiss is to "assess the legal
feasibility of the complaint, not to assay the weight of the
evidence which might be offered in support thereof." In re
Initial Pub. Offering Sec. Litig., 383 F. Supp. 2d 566, 574
(S.D.N.Y. 2005) (internal quotation marks omitted).

At this stage, the Court must accept all well-pleaded
factual allegations in the complaint as true and draw all
reasonable inferences in favor of the non-moving party. See
Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 180
(2d Cir. 2008); see also Chambers v. Time Warner, Inc., 282

- 10 -

F.3d 147, 152 (2d Cir. 2002). The complaint should not be dismissed if the factual allegations "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). However, a complaint should be dismissed if the plaintiff has not offered sufficient factual allegations that render the claim facially plausible. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Furthermore, the requirement that a court accept the factual allegations in the complaint as true does not extend to legal conclusions. See id., 556 U.S. at 678.

B.    STATUTE OF LIMITATIONS

New York law imposes a six-year statute of limitations for "an action upon a contractual obligation or liability, express or implied." N.Y. C.P.L.R. Section 213(2). In general, "[a]n action . . . must be commenced within the time specified in [Article 2 of N.Y. C.P.L.R.] unless a different time is prescribed by law or a shorter time is prescribed by written agreement." N.Y. C.P.L.R. Section 201. In an action for nonpayment of principal or interest on bonds, "[t]his period 'begins to run on each interest installment from the date it becomes due and on recovery of the principal from the day after the bond matures.'" MMA Consultants I, Inc. v. Republic of Peru, No. 15 Civ. 5551, --- F. Supp. 3d ----, 2017 WL 1235005, at *21 (S.D.N.Y. Mar. 24, 2017) (quoting

Morris v. People's Republic of China, 478 F. Supp. 2d 561,
571 (S.D.N.Y. 2007)). In an action "for nonpayment on Bonds
with an express redemption period . . . Plaintiff's claim for
nonpayment accrue[s]" upon the expiration of the specified
period, "when principal and interest bec[o]me due under the
terms of the Bonds." MMA Consultants I, 2017 WL 1235005, at
*21.

C.   NML CAPITAL AND WHITE HAWTHORNE

      In the correspondence regarding the Province's Motion,
the parties rely extensively on two cases concerning unpaid
debts on sovereign bonds involving the Republic of Argentina
("Argentina" or the "Republic"): (1) NML Capital, 17 N.Y.3d
250, 621 F.3d 230 (2d Cir. 2010), and 699 F.3d 246 (2d Cir.
2012), which Ajdler cites in support of his Opposition; and
(2) White Hawthorne, 2016 WL 7441699, which the Province cites
in support of its Motion.

      1.   NML Capital

      NML Capital concerns numerous consolidated actions filed
in the Southern District of New York regarding certain bonds
issued by Argentina, alleging breach of contract for failure
to pay principal and interest due on the bonds at issue.

a. Unpaid Principal and Interest

The first branch of NML Capital concerns certain Floating Rate Accrual Notes ("FRANs") issued by Argentina in 1998. See NML Capital, 17 N.Y.3d at 254. The FRANs had a maturity date of April 10, 2005 and, for those bonds which were accelerated, an acceleration date of February 2005. See id.

Following a financial crisis in late 2001, "Argentina announced that it would no longer service its approximately $80 billion in external debt, including the FRANs," and, beginning in December 2001, the Republic ceased making biannual interest payments or any payments of principal owed to the FRANs bondholders. Id. at 255.

In response, several companies, including NML Capital, instituted separate actions against Argentina to recover unpaid principal and interest on the FRANs. See id. Of those, the district court consolidated and granted summary judgment for plaintiffs in nine cases, the earliest of which was filed in February 2005 and the last of which was filed in April 2007. See NML Capital, Ltd. v. Republic of Argentina, 05 Civ. 2434, 2009 WL 1528535 (S.D.N.Y. May 29, 2009); see also Docket Reports for Civil Case Nos. 05-cv-2434, 05-cv-3328, 05-cv-04239, 05-cv-10201, 06-cv-5887, 06-cv-6466, 07-cv-1791, 07-cv-2349, 07-cv-2690.

Following the court's award of summary judgment, the parties cross-appealed to the Second Circuit, with plaintiffs challenging the court's findings with respect to the amount of interest owed. See NML Capital, 621 F.3d 230; NML Capital, Ltd. v. Republic of Argentina, No. 06 Civ. 6466, 2008 WL 839740 (S.D.N.Y. Mar. 28, 2008). On appeal, the Second Circuit certified several questions to the New York Court of Appeals, including whether "a bond provision requiring the issuer of the bond to make, on dates certain, bi-annual interest payments on principal 'until the principal hereof is paid' [is] properly construed as an obligation to pay interest for so long as the principal is outstanding, including after the date of maturity[.]" NML Capital, 621 F.3d at 244[2]; see also NML Capital, 17 N.Y.3d at 257. The New York Court of Appeals accepted the certification and answered the question in the affirmative, finding that "the FRANs certificate in this case required [Argentina] to continue to make biannual interest payments post-maturity while the principal remained unpaid." NML Capital, 17 N.Y.3d at 262.

---

[2] The Second Circuit also certified the nearly identical question of whether such a provision is properly construed as an obligation to pay interest even "after acceleration[.]" Id.

b. Pari Passu

In a separate line of cases, NML Capital brought several actions alleging that Argentina violated the pari passu clause on certain bonds issued beginning in 1994 pursuant to a Fiscal Agency Agreement (the "FAA" and the "FAA Bonds"). See NML Capital, 699 F.3d at 246. The district court consolidated several cases, all of which were filed between 2009 and 2011 and concerned FAA Bonds with maturity dates "rang[ing] from April 2005 to September 2031." Id. at 251, 253. The District Court found that the Republic had breached the FAA's pari passu clause and granted plaintiffs injunctive relief, which the Second Circuit subsequently affirmed. See id. at 265.

As with the FRANs, in December 2001, the President of Argentina declared "a 'temporary moratorium' on principal and interest payments on more than $80 billion of its public external debt including the FAA Bonds." Id. at 251. Following this default, "Argentina offered holders of the FAA Bonds new exchange bonds in 2005 and 2010" on which the Republic made payments "while failing to make any payments to persons who still held the defaulted FAA Bonds." Id. In addition, in 2005, "in order to exert additional pressure on bondholders to accept the exchange offer, the Argentine legislature passed . . . the 'Lock Law[,]'" which declared that:

> Article 2 — The national Executive Power may not, with
> respect to the bonds . . . , reopen the swap process
> established in the [2005 exchange offer].
> Article 3 — The national State shall be prohibited from
> conducting any type of in-court, out-of-court or private
> settlement with respect to the bonds . . . .
> Article 4 — The national Executive Power must . . .
> remove the bonds . . . from listing on all domestic and
> foreign securities markets and exchanges.

Id. at 252 (citations omitted).

In order "[t]o overcome the Lock Law's prohibition
against reopening the exchange" and thereby enable the 2010
exchange offer, Argentina enacted additional legislation
temporarily suspending the Lock Law. Id. Following the 2005
and 2010 exchange offers, Argentina "made all payments due on
the debt it restructured in 2005 and 2010," but, in accordance
with the Lock Law, no longer acknowledged the validity of the
FAA Bonds and failed to make any payments of principal or
interest on them. Id. at 253.

The district court, upon granting plaintiffs declaratory
and injunctive relief, found "that Argentina [had] lowered
the rank of plaintiffs' bonds in two ways: (1) when it made
payments currently due under the Exchange Bonds, while
persisting in its refusal to satisfy its payment obligations
currently due under [plaintiffs'] Bonds and (2) when it
enacted [the Lock Law] and [the Lock Law Suspension]." Id.
at 254 (internal quotation marks and citations omitted).

Subsequently, the Second Circuit affirmed both the district court's injunction and the payment formulas used to calculate the injunctive relief. See NML Capital, 699 F.3d at 265; see also NML Capital, Ltd. v. Republic of Argentina, 727 F.3d 230 (2d Cir. 2013). In doing so, the Second Circuit cautioned:

> [T]his case is an exceptional one with little apparent bearing on transactions that can be expected in the future. Our decision here does not control the interpretation of all pari passu clauses or the obligations of other sovereign debtors under pari passu clauses in other debt instruments. As we explicitly stated in our last opinion, we have not held that a sovereign debtor breaches its pari passu clause every time it pays one creditor and not another, or even every time it enacts a law disparately affecting a creditor's rights. We simply affirm the district court's conclusion that Argentina's extraordinary behavior was a violation of the particular pari passu clause found in the FAA.

NML Capital, 727 F.3d at 247.

### 2. White Hawthorne, LLC v. Republic of Argentina

In White Hawthorne, plaintiffs were institutional investors that held bonds issued by Argentina, including FAA Bonds and bonds issued under a 1993 Fiscal Agency Agreement (the "Brady Bonds"). See 2016 WL 7441699. As in NML Capital, the White Hawthorne plaintiffs (1) brought an action "seeking breach-of-contract damages based on nonpayment of principal and interest, as well as injunctive relief for alleged violations of the applicable pari passu clause" and (2) did so in response to Argentina's 2001 declaration of "a

- 17 -

moratorium on payment of its sovereign debts on December 24, 2001" and subsequent failure to make payments on the bonds. Id. at *1. However, the White Hawthorne plaintiffs filed suit in this District "[i]n February 2016, over fourteen years after the Republic's default[.]" Id.

Argentina filed a motion to dismiss on statute of limitations grounds, which the district court granted. The Court found that "[e]ach of the Republic's missed interest payments triggered a six-year limitations period on a claim for that installment, and the date of maturity or acceleration began the period on a claim for principal." Id. at *10. Accordingly, White Hawthorne could recover only "those interest payments due within the six years prior to commencing the action, and any claim for earlier installments [wa]s time-barred." Id. After finding that no interest payments on the FAA Bonds became due during the six years preceding the filing of the complaint, the court found that plaintiffs' claims for interest on the FAA Bonds were untimely. Likewise, "because the Brady Bonds became due and payable in their entirety" more than six years prior to the filing of the complaint, any claims for principal and interest on those bonds were also time-barred. Id.

The court further held that the limitations period "for the legal remedy governs when 'both a legal and an equitable

remedy exists as to the same subject-matter[.]'" Id. (quoting

Grosz v. Museum of Modern Art, 772 F. Supp. 2d 473, 481

(S.D.N.Y. 2010)) (emphasis in original). Accordingly, the

Court found that plaintiffs' claim for breach of the pari

passu clause was time-barred.

### III. **APPLICATION**

Upon review of the parties' submissions regarding the

instant motion and relevant law, this Court finds that all of

Ajdler's claims are time-barred.

A.   UNPAID PRINCIPAL AND INTEREST

Accepting the factual allegations in the Complaint as

true, as the Court must do at this stage, the Bonds matured

on September 4, 2007, at which time principal became due. In

addition, the interest on the Bonds became due biannually

between September 4, 2004 and September 4, 2007. Accordingly,

Ajdler's claims for both principal and interest are untimely.

In the Complaint, Ajdler states that he received neither

"payment of principal on the Bonds' maturity date of

September 4, 2007, or on any date thereafter" nor "the

interest payments due September 4, 2004, or on any date

thereafter." (Complaint ¶¶ 21-22.) The Complaint further

acknowledges that "the entire principal amount of the Bonds

became due and payable" on their maturity date of September

4, 2007. (Id. ¶ 56.) Accordingly, with respect to Ajdler's

claims for damages, the relevant limitations period began to
run on the maturity date.[3] Indeed, even the Unconditional
Right Provision, on which Ajdler relies for the proposition
that payment can be sought notwithstanding any limitations
period, supports such a result:

> [E]ach Bondholder shall have the right . . . to receive
> payment of the principal of and interest on (including
> Additional Amounts) its Bond on the stated maturity
> expressed in such Bond and to institute suit/or the
> enforcement of any such payment[.]

(Dkt. No. 1-1 at 14, Section 4.6 (emphasis added).)

   With respect to the applicable limitations period, the
Terms and Conditions of the Indenture contain a prescription
provision, which states "that '[a]ll claims against the
Province for payment of principal . . . or interest . . . in
respect of the Bonds shall be prescribed unless made within
four years from the date on which such payment first became
due.'" (Id. ¶ 49 (quoting Indenture at 48 Section 15).)
Accordingly, because the Indenture provides for a shorter
limitations period than that provided by statute, the time

---

[3] The Province notes in its Motion that "[t]he [B]onds were in fact
accelerated on December 13, 2004, thereby making immediately due and
payable outstanding principal, interest . . ., and all other amounts due
in respect of the Bonds." (April 5 Letter at 2 n.1 (internal quotation
marks and citation omitted).) However, at the motion to dismiss stage,
the Court must accept all well-pleaded factual allegations as true and
the Complaint makes no reference to any acceleration or date thereof.
Therefore, the Court regards the date of maturity as the relevant
benchmark on which the statute of limitations began to run regarding
principal and any interest payments for which the clock had not already
started.

for Ajdler to file any claims for unpaid principal or interest on the bonds ended on September 4, 2011, four years following the date of maturity. See N.Y. C.P.L.R. Section 201. Even if, for the sake of argument, the Court were to apply the six-year limitations period, Ajdler's claims for unpaid principal and interest would remain time-barred.

Notwithstanding his acknowledgment that any claims for principal are time-barred, Ajdler contends that, because the Indenture states that "bondholders are entitled to interest payments until the principal is actually repaid in full, and not merely until the bond maturity date[,]" it follows that "the only event that terminates the obligation to make interest payments on the Bonds is the repayment in full of the principal, which has not occurred." (Complaint ¶ 47.) Accordingly, Ajdler argues that "interest payments due from the Province in the last four years are not prescribed or otherwise time barred." (Complaint ¶¶ 51-52.)

Ajdler further claims that NML Capital supports his conclusion, and that "there is nothing in [the New York Court of Appeals's NML Capital decision] or the terms of the bonds at issue" to suggest that the obligation created by the Indenture - that the Province make biannual interest payments until the principal is "actually repaid in full" - would not

- 21 -

"survive in the event a claim on the principal was time-barred[.]" (Sur-reply at 2.)

Taken to its logical conclusion, Ajdler's position would permit a plaintiff to bring a claim for unpaid interest at any time, any number of years later, on an instrument providing for interest payments to be made until the principal is "actually repaid in full." In other words, no limitations period would exist on interest payments where principal of an instrument remains unpaid. The Court cannot agree with Ajdler's extreme position that the New York Court of Appeals, in NML Capital, intended to permit claims for unpaid interest indefinitely.

Furthermore, there is an important distinction between NML Capital and the instant case: NML Capital did not involve time-barred claims. All of the NML Capital cases referred to here were filed within six years of the relevant maturity or acceleration dates. The FRANs, which were the bonds at issue before the New York Court of Appeals, had a maturity date in April 2005 and, for certain FRANS, an acceleration date in February 2005. See NML Capital, 17 N.Y.3d at 255. The consolidated cases regarding the FRANs were filed between February 2005 and April 2007, well within the six-year limitations period. See NML Capital, No. 05 Civ. 2434, 2009 WL 1528535 (S.D.N.Y. May 29, 2009); see also supra Section

II.C.1. Because the claims at issue in those cases were not time-barred, the New York Court of Appeals, in addressing the questions certified by the Second Circuit, had no occasion to determine whether the requirement that interest be paid following the maturity date extends beyond the limitations period.

White Hawthorne fills this gap and squarely addresses the application of statutes of limitation on claims of unpaid interest post-maturity. White Hawthorne concurred with NML Capital that claims on unpaid interest may indeed be brought following the maturity date, but added simply that the limitations period begins to run on the maturity date – or the date of acceleration, where applicable – and, thereafter, any claims must be brought within the relevant limitations period. See White Hawthorne, 2016 WL 7441699, at *10 ("[A] plaintiff may recover only those interest payments due within the six years prior to commencing the action, and any claim for earlier installments is time-barred."); see also id. ("Each of the Republic's missed interest payments triggered a six-year limitations period on a claim for that installment, and the date of maturity or acceleration began the period on a claim for principal."). Thus, the Court concludes that White Hawthorne is not in tension with the New York Court of

- 23 -

Appeals's determination in NML Capital, as Ajdler suggests; rather, White Hawthorne clarifies the limits of NML Capital.

Equally unavailing is Ajdler's argument that, if the Province meant to foreclose the possibility of interest payments extending in perpetuity, the parties should have explicitly stated in the Indenture that claims of interest do not "survive in the event a claim on the principal was time-barred[.]" (Sur-reply at 2.) Although such a requirement is unnecessary — statutes of limitation exist, in part, to obviate the need for provisions limiting every possible claim — the prescription period provided for in the Indenture does exactly what Ajdler suggests the Province should have done. (See Complaint ¶ 49; Indenture at 48 Section 15 ("All claims against the Province for payment of principal . . . or interest . . . in respect of the Bonds shall be prescribed unless made within four years from the date on which such payment first became due.")(emphasis added).)

Accordingly, the Court concludes that Ajdler's claims for unpaid principal and unpaid interest are time-barred.

B.   PARI PASSU

Ajdler's claims for equitable relief are equally untimely. "[T]he statute of limitations for the legal remedy governs when 'both a legal and an equitable remedy exists as to the same subject-matter[.]'" White Hawthorne, 2016 WL

7441699, at *10 (quoting Grosz, 772 F. Supp. 2d at 481).
Accordingly, Ajdler's claim for breach of the pari passu
clause is time-barred.

The Court finds that NML Capital does not support a
contrary result. In NML Capital, the court found that
Argentina violated the pari passu clause of the FAA Bonds
because the President's declaration of "a 'temporary
moratorium' on principal and interest payments on more than
$80 billion of its public external debt including the FAA
Bonds" and the Argentine legislature's enactment of the Lock
Law and Lock Law Suspension were extraordinary acts
undertaken to "subordinat[e] the[] FAA Bonds to the Exchange
Bonds and lower[] the ranking of the[] FAA Bonds below the
Exchange Bonds." 699 F.3d at 251-52.

However, the Court went to great lengths to note that
this was a truly extraordinary case that would not likely
apply to many cases involving pari passu clauses in the
future. See id. at 247 ("[T]his case is an exceptional one
with little apparent bearing on transactions that can be
expected in the future.").

The instant case is distinguishable from NML Capital in
many respects. Here, the Complaint provides no indication
that any extraordinary circumstances exist comparable to
those presented in NML Capital or that would otherwise

constitute a breach of pari passu. Indeed, Ajdler appears to
admit that he is not aware of such extraordinary conduct,
insofar as he suggests that he "should be allowed to engage
in discovery to ascertain whether the Province has, in fact,
engaged in the kind of conduct in breach of [the] pari passu
clause that the Second Circuit has previously found
sufficient . . . ." (Opposition at 3.) Rather, Ajdler alleges
primarily that the Province has paid principal and interest
on other bonds, including the New Bonds and 2024 Bonds. This
fact, without more, is insufficient to state a claim of breach
of pari passu. See NML Capital, 727 F.3d. at 247 ("[W]e have
not held that a sovereign debtor breaches its pari passu
clause every time it pays one creditor and not another[.]");
White Hawthorne, 2016 WL 7441699 at *3 ("Nonpayment on
defaulted debt alone is insufficient to show breach of the
pari passu clause.")

Moreover, the FAA Bonds at issue in NML Capital had
maturity dates ranging from April 2005 to September 2031 and
"[p]laintiffs sued Argentina on the defaulted FAA Bonds at
various points from 2009 to 2011." 727 F.3d. at 253. Thus,
the NML Capital plaintiffs' claims for equitable relief were
not time-barred.

White Hawthorne is also instructive here. As in NML
Capital, that case also involved FAA Bonds, which were the

- 26 -

subject of the 2001 presidential moratorium and extraordinary legislation. Nevertheless, the Court found that plaintiffs had been dilatory. See 2016 WL 744169, at *10. Thus, notwithstanding substantially similar allegations of extraordinary conduct, the court there found that plaintiffs' claims for breach of the pari passu clause were time-barred. Therefore, although Ajdler has not alleged that the Province engaged in the extraordinary conduct necessary to find a breach of pari passu, it would make no difference if he did. The Court finds that Ajdler's claims for equitable relief are untimely.

## IV.  ORDER

For the reasons stated above, it is hereby

ORDERED that the motion (Dkt. Nos. 7, 9) of defendant Province of Mendoza to dismiss the complaint of plaintiff Moshe Marcel Ajdler herein (Dkt. No. 1) is GRANTED.


SO ORDERED.

Dated:     New York, New York
           2 August 2017

                                   Victor Marrero
                                      U.S.D.J.


- 27 -